UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
JENN-CHING LUO,

                    Plaintiff,

        -against-                          MEMORANDUM AND ORDER
                                           10-CV-1985 (JS)(AKT)
BALDWIN UNION FREE SCHOOL DISTRICT,
MICHELLE GALLO, SHERRISSE MARTIN,
SUSAN M. GIBSON and JOHN M. SUOZZI,

                    Defendants.
--------------------------------------X
Appearances:
For Plaintiff:      Jenn-Ching Luo, pro se
                    830 Hastings Street
                    Baldwin, NY 11510

For Defendants      Jeltje DeJong, Esq.
Baldwin UFSD,       Kelly E. Wright, Esq.
Michelle Gallo,     Devitt Spellman Barrett, LLP
and Sherrisse       50 Route 111
Martin:             Smithtown, NY 11787


Susan M. Gibson:    Ralph A. Catalano, Esq.
                    Catalano, Gallardo & Petropoulos, LLP
                    1565 Franklin Avenue
                    Mineola, NY 11501


John M. Suozzi:     Jonathan R. Hammerman, Esq.
                    Kaufman, Borgeest & Ryan LLP
                    1305 Franklin Avenue
                    Garden City, NY 11530

                    Dennis John Dozis, Esq.
                    Kaufman, Borgeest & Ryan LLP
                    120 Broadway, 14th Floor
                    New York, NY 10271


SEYBERT, District Judge:

        Pro se Plaintiff Jenn-Ching Luo brought this action to

redress perceived infirmities in the way Defendant Baldwin Union

Free School District (the "District") and several individual defendants addressed the educational needs of Plaintiff's disabled child, B.L. The Defendants are the District, Michelle Gallo, Sherrisse Martin, Susan Gibson and John Suozzi, Ph.D; Plaintiff asserts violations of the Individuals with Disabilities Education Act ("IDEA") and Section 1983 of Title 42 of the United States Code ("Section 1983"), as well as several state law claims.

Pending before the Court are Gibson's and Suozzi's motions to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b).[1] Also pending before the Court is Plaintiff's letter motion to amend the caption of this litigation.

For the reasons that follow, Plaintiff's motion to amend the caption is GRANTED insofar as the Court will construe the Complaint as asserting only Plaintiff's own claims, not claims on behalf of B.L. Gibson's motion to dismiss the Complaint is GRANTED. Suozzi's motion to dismiss is GRANTED IN PART AND DENIED IN PART.

---

[1] Gibson has also moved for judgment on the pleadings pursuant to Rule 12(c). As Gibson has not yet answered, that motion is DENIED as premature. See Taylor v. City of New York, 953 F. Supp. 95, 97 (S.D.N.Y. 1997).

<u>BACKGROUND</u>

The following facts are taken from the Complaint and are presumed to be true for the purpose of this Memorandum and Order.

I. <u>The Parties</u>

Plaintiff is the parent of B.L., an autistic child residing in the District. (Compl. ¶ 13.)

Defendant Michelle Gallo was the District's director of pupil services. (Compl. ¶ 15.) Defendant Sherrisse Martin was the assistant director of pupil services. (Compl. ¶ 16.)

Defendant Susan Gibson is an attorney who represented the District at a due process hearing concerning B.L.'s Individualized Education Plan ("IEP"). Gibson also served as a counselor to the District, providing legal advice in connection with Plaintiff's dispute over B.L.'s education. (Compl. ¶ 17.)

Defendant John M. Suozzi, Ph.D, is a licensed psychologist. He maintains a private practice, and he was hired as a consultant to evaluate B.L. (Compl. ¶ 18.) As the Court will explain, this psychological evaluation, and Suozzi's report thereof, allegedly loomed large in the development of B.L.'s IEP.

II. <u>Plaintiff's Dispute with the District</u>

B.L. has received home instruction as part of his IEP

since he was in pre-school. (Compl. ¶ 65.) As near as the Court can determine, this lawsuit stems from the District's attempt to modify B.L.'s IEP by removing or limiting the home instruction component and replacing or supplementing it with "parent skills" classes whereby Plaintiff can learn certain techniques that he could use at home to accelerate B.L.'s development. (See Compl. ¶¶ 67-68, 72.)

A. The District's "Hitman Practice"

Plaintiff alleges that the District follows what he calls "hitman practice" when determining the appropriate level of services it must provide to disabled students. Pursuant to this practice, school districts attempt to end-around the IEP development process by paying an ostensibly disinterested consultant to write a "recommendation" for a child's educational program that is nothing more than a dressed-up version of what type of program best suits the school. (Compl. ¶¶ 64-76.) The "hitman" has little or no knowledge of a particular student's circumstances, and instead recites the school's desired outcome, couched as a recommendation. (See Compl. ¶¶ 78-79.) Plaintiff does not say so explicitly, but the school district's motive for such a tactic appears to be financial; the district can save money if its consultants "recommend" the least expensive IEP.

Plaintiff alleges that he and B.L. were victims of

this "hitman" practice on at least two occasions.  On the first, the District asked a woman named Andretta to write a report that recommended replacing B.L.'s home instructional program with "parent lessons." (Compl. ¶¶ 77, 80.)  Andretta did so, despite having no personal knowledge about B.L.'s educational progress, because the District promised her a job in exchange for her report.  (Compl. ¶¶ 83-86.)

On the second, the District's psychologist suggested that she perform a psychological re-evaluation of B.L (the "Re-evaluation").  (See Compl. ¶ 94.)  Wary that the Re-evaluation would be conducted by a "hitman," Plaintiff insisted that it be performed by someone unaffiliated with the District.  (Id. ¶¶ 95-97.)  The District hired Defendant Suozzi, a psychologist in private practice, to perform the Re-evaluation and sent him a letter authorizing him to proceed.  (Id. ¶ 103.)  Suozzi conducted the Re-evaluation on February 2, 2009.  (Id. ¶ 111.)  Notwithstanding Plaintiff's precautions, Suozzi turned out to be a District "hitman," too.  The Re-evaluation and Suozzi's report are discussed in detail, below.

B. B.L.'s Re-evaluation

Suozzi's report of the Re-evaluation listed several recommendations for B.L.'s development, two of which Plaintiff cites in the Complaint.  In Recommendation 6, Suozzi opined that

5

B.L. was not ready to learn some of the skills in his then-current educational program. (Compl. ¶ 234.) In Recommendation 7, Suozzi suggested that "home-based instruction" would help Plaintiff learn skills he needed to maximize B.L.'s development. (Compl. ¶ 245.)

Plaintiff disagrees with the substance of these Recommendations, and he objects to three procedural aspects of the Re-evaluation and Suozzi's report. First, the Re-evaluation was conducted without the required parental consent. (See generally id. ¶¶ 137-170.) More specifically, Plaintiff returned a consent form with four conditions and the District accepted Plaintiff's "conditional consent" before the Re-evaluation began. (Id. ¶¶ 137-139.) The District failed to satisfy Plaintiff's conditions after-the-fact, rendering, in Plaintiff's view, the consent retroactively void. (See generally id. ¶¶ 137-170.) Second, Plaintiff received Suozzi's report only two days before he was supposed to meet with the District to discuss B.L.'s IEP. (Id. ¶ 118.) Plaintiff thus had little time to prepare his response. (Id. ¶ 119.) Third, Suozzi's report did not provide sufficient information to support its conclusions. (See generally id. ¶¶ 231-280.) Among other shortcomings, the Recommendations were "too vague" and cited no peer-reviewed publications for support. (Id. ¶¶ 235,

237.)

C. The February 26, 2009 Meeting

The District used Suozzi's report, which was tainted by the District's "hitman practice" and rife with substantive and procedural defects, as the start- and end-point to discussions concerning B.L.'s educational needs, thereby cutting Plaintiff out of the process of determining what was best for B.L. (See generally Compl. ¶¶ 207-230.) According to Plaintiff, "Suozzi determined [B.L.'s] educational needs (Recommendations 6 and 7) by himself." (Id. ¶ 210.) And, although Suozzi took time to "emotionally explain" his conclusions to Plaintiff, Plaintiff suggests that he was not given a meaningful opportunity to voice his own thoughts about B.L.'s educational needs. (Id. ¶ 121.) Further, although his Complaint does not allege that B.L.'s home instruction was terminated or that Plaintiff actually attended the "parent skills" classes, it is apparent that Plaintiff feels the District's strong-arm tactics denied B.L. a free and appropriate public education ("FAPE"). (See id. ¶ 286(e); see also Pl. Gibson Opp. at 6 (suggesting that, had it entertained Plaintiff's views on B.L.'s education, the District would have

<u>added</u> services to B.L.'s program).)[2]

III. <u>Plaintiff's Due Process Complaint and Hearing</u>

Plaintiff aired these grievances in a due process complaint against the District that he filed on March 10, 2009. (Compl. ¶ 19.) Thereafter, the District appointed an independent hearing officer ("IHO") and a hearing was held. (<u>Id.</u> ¶ 20.) The IHO apparently ruled in the District's favor, (<u>id.</u> ¶ 61), and that decision was upheld on appeal by the state review board. (<u>Id.</u> ¶ 62.) The Complaint contains a host of allegations charging the IHO with misconduct (<u>see</u> <u>id.</u> ¶¶ 19-62). Inasmuch as the IHO is not a defendant in this case, these allegations--which include claims that the IHO had improper <u>ex parte</u> contact with the District and scheduled the hearing at a time inconvenient to Plaintiff--are relevant only to show that Plaintiff was allegedly not provided with an impartial hearing. Plaintiff also asserts that the state review officer upheld the IHO's decision with "nothing more than a rewritten version" of the IHO's opinion. (<u>Id.</u> ¶ 62.)

IV. <u>Defendant Gibson's Role</u>

Gibson, a private attorney, represented the District at the due process hearing and counseled the District throughout

---

[2] Plaintiff's opposition to Gibson's motion to dismiss is cited as "Pl. Gibson Opp." and his opposition to Suozzi's motion is cited as "Pl. Suozzi Opp."

its dispute with Plaintiff. (See, e.g., Compl. ¶¶ 126, 241.) According to Plaintiff, Gibson advised the District that it was not bound by the conditional nature of Plaintiff's consent to the Reevaluation, (Compl. ¶ 124), provided case law to Defendant Martin concerning the Family Educational Rights and Privacy Act, (id. ¶ 125), and once, after Plaintiff had a dispute with the IHO over whether Plaintiff was entitled to receive digital transcripts of the proceeding, "chased Plaintiff out of the conference room where the hearing was conducted, and closed the door." (Id. ¶ 47.) Plaintiff also complains that Gibson did not know the proper evaluation procedures mandated by IDEA. (Id. ¶¶ 188-189.)

## DISCUSSION

The Court first clarifies the scope of Plaintiff's Complaint and then addresses the pending motions.

## I. The Scope of Plaintiff's Complaint

It is axiomatic that district courts have a duty to construe pro se pleadings to raise the strongest arguments they suggest. Soto v. Walker, 44 F.3d 169, 173 (2d Cir. 1995). Consistent with this duty, the Court reads Plaintiff's Complaint liberally. Id. As an initial matter, however, the Court notes Plaintiff has clarified that he does not assert any claims on behalf of B.L. Plaintiff had originally captioned his Complaint

"Jenn-Ching Lou on behalf of himself and B.L." But because pro se litigants may not appear in federal court on someone else's behalf, Berrios v. New York City Housing Authority, 564 F.3d 130, 133-34 (2d Cir. 2009), the Court ordered Plaintiff either to retain counsel for B.L. or have B.L.'s claims dismissed from the case. (August 2, 2010 Minute Order.) B.L. has not appeared in this action through counsel, and Plaintiff's September 27, 2010 letter stated unequivocally that "BL has no claim in the complaint" and "no one cause of action is asserted in BL's right." (Docket Entry 60 at 2.) Accordingly, Plaintiff's Complaint is limited to claims that Plaintiff may assert on his own behalf.

In this case, though, whether Plaintiff is suing in his own right or on behalf of B.L. is a distinction without much of a difference. The Supreme Court has recognized that parents have rights to their children's FAPE and that they may sue on their own to enforce those rights. See Winkleman v. Parma City Sch. Dist., 550 U.S. 516, 531, 127 S. Ct. 1994, 2004 (2007).

With that in mind, the Court liberally construes Plaintiff's Complaint to assert the following four federal claims: first, a claim that all Defendants violated IDEA by (a) subjecting B.L. to the Reevaluation without valid parental consent; (b) failing to gather the relevant information in

support of Recommendations 6 and 7, and (c) cutting Plaintiff out of meaningful discussions concerning B.L.'s IEP by presenting Suozzi's "hitman" evaluation of B.L.'s educational needs to Plaintiff as a <u>fait accompli</u>; <u>second</u>, a Section 1983 claim that all Defendants deprived Plaintiff of his rights under IDEA for the same reasons (Compl. ¶¶ 287-300.); <u>third</u>, a Section 1983 Claim that all Defendants deprived Plaintiff of a Fourteenth Amendment property right to B.L.'s FAPE; <u>fourth</u>, a Section 1983 claim that all Defendants deprived Plaintiff of a Fourteenth Amendment liberty right by suggesting that Plaintiff learn "parent skills" as part of B.L.'s new IEP (Compl. ¶¶ 301-317).

In addition to his federal claims, Plaintiff also appears to assert four state law claims: <u>first</u>, the District, Gallo and Martin breached a contract by not honoring the conditional consent to the Reevaluation, (Compl. ¶¶ 318-326); <u>second</u>, all Defendants used the IEP determination process to harass Plaintiff (Compl. ¶¶ 327-331); <u>third</u>, all Defendants committed a prima facie tort; and <u>fourth</u>, Suozzi defamed Plaintiff by writing that Plaintiff needed to learn additional skills (Compl. ¶ 309).

## II. <u>Gibson's and Suozzi's Motions</u>

Gibson's motion to dismiss the Complaint is GRANTED,

and Plaintiff's claims against her are dismissed in their entirety. Suozzi's motion to dismiss is GRANTED IN PART AND DENIED IN PART. Plaintiff's Section 1983 claim that Suozzi deprived Plaintiff of his right to participate in the determination of B.L.'s IEP may go forward. The remainder of Plaintiff's claims against Suozzi are DISMISSED.

A. Legal Standard for Rule 12 Motions

To survive a Rule 12(b)(6) motion, a plaintiff must plead sufficient factual allegations in the complaint to "state a claim [for] relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929, 949 (2007). The complaint does not need "detailed factual allegations[,]" but it demands "more than labels and conclusions, an a formulaic recitation of the elements of a cause of action will not do." Id. at 555. In addition, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level." Id. Determining whether a plaintiff has met his burden is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, __

U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

B. <u>Plaintiff's IDEA Claims</u>

Plaintiff may not maintain his IDEA claims against Gibson and Suozzi because IDEA does not provide for individual liability. <u>See</u> <u>B.I. v. Montgomery County Bd. of Educ.</u>, __ F. Supp. 2d __, 2010 WL 4595518, at *2 (M.D. Ala. Nov. 12, 2010) ("IDEA does not provide for individual liability."); <u>see also</u> <u>Parenteau v. Prescott Unified School Dist.</u>, No. 07-CV-8072, 2008 WL 5214997, at *8 (D. Ariz. Dec. 11, 2008); <u>S.W. v. Warren</u>, 528 F. Supp. 2d 282, 298 (S.D.N.Y. 2007). Accordingly, Plaintiff's IDEA claims against Gibson and Suozzi are DISMISSED.

C. <u>Section 1983 Claims</u>

Section 1983 provides, in relevant part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983. To state a claim under this law, a plaintiff must allege: (1) that the defendant acted under color of state law; and (2) that as a result of the defendant's actions, the plaintiff suffered a deprivation of his or her rights or

privileges as secured by the Constitution or laws of the United States.  See Am. Mfr. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50, 119 S. Ct. 977, 985, 143 L. Ed. 2d 130, 143 (1999).

### 1. Under Color of State Law

As initial matter, Plaintiff has alleged that Suozzi, but not Gibson, was acting under color of state law.  The Court addresses the allegations against Gibson and then those against Suozzi.

### a. Gibson was not Acting Under Color of State Law

Even construing his Complaint liberally and affording him every favorable inference, Plaintiff has not alleged that Gibson was acting under color of state law.  Plaintiff's allegations as to Gibson center on her role as a counselor and advocate for the District.  (See Compl. ¶¶ 124-128 (providing legal advice and precedent); ¶ 241 (cross-examining witnesses at due process hearing); ¶¶ 254, 257 (voicing objections at due process hearing); see also id. at ¶¶ 189-194 (alleging that Gibson did not know IDEA's evaluation procedure).)  Plaintiff himself characterizes Gibson's role as providing the legal advice that precipitated the District's allegedly wrongful acts.  (See, e.g., Pl. Gibson Opp. at 14 ("This action alleged that Gibson was paid to review legal issues, but Gibson gave wrong legal advice, and also advised school district not to remedy the

dispute.").)  Attorneys representing the state do not act under color of state law when they perform their traditional functions as counsel.  See Polk County v. Dodson, 454 U.S. 312, 325 102 S. Ct. 445, 453 (1981) (public defender does not act under color of state law when representing indigent client).  To the extent Plaintiff attempts to evade this rule by suggesting, however obliquely, that Gibson conspired with others to deny Plaintiff his rights, (see Compl. ¶ 286), such conclusory allegations do not suffice to plead a Section 1983 claim against a private actor.  See Browdy v. Karpe, 131 F. App'x 751, 753 (2d Cir. 2005).  Accordingly, Plaintiff's Section 1983 claims against Gibson are DISMISSED.

> b.  Suozzi was Allegedly Acting Under Color of State Law

Plaintiff has sufficiently alleged that Suozzi violated Plaintiff's rights under color of state law.  "[A] private actor acts under color of state law when the private actor is a willful participant in joint activity with the State or its agents."  Ciambriello v. County of Nassau, 292 F.3d 307, 324 (2d Cir. 2002) (quotations and citations omitted).  Here, Plaintiff claims that Suozzi jointly engaged in the so-called "hitman practice" whereby he revised his report to reflect the District's desired outcome before presenting it to Plaintiff as

*fait* *accompli*. (See Compl. 203 ("The [Re-evaluation] was under the cloud of hitman practice. School district and Suozzi might revise the report to plant Recommendations several times until school district satisfied, but they covered it up.").)

### 2. Deprivation of Federal Rights

Plaintiff alleges that Suozzi deprived him of his federal rights under IDEA and the Fourteenth Amendment. The Court addresses each in turn.

### a. IDEA Violations

Plaintiff alleges that Suozzi violated IDEA by (1) excluding Plaintiff from meaningful discussions concerning B.L.'s education, see 20 U.S.C. § 1414(b)(4); (2) conducting the Reevaluation without parental consent, see 20 U.S.C. § 1414(c)(3); and (3) failing to gather sufficient factual support for certain recommendations he included in his report (Compl. 231-280). Neither Suozzi nor Gibson argues that Plaintiff cannot use Section 1983 to redress violations of IDEA. (See Gibson Br. at 7; Suozzi Br. at 21) ("Nor can Dr. Suozzi be individually liable for alleged violations of IDEA outside of [Section 1983]") (emphasis added). The rule in this Circuit is more nuanced than the defendants make it seem. Unlike many Circuits, which do not permit plaintiffs to use Section 1983 to redress IDEA violations, see, e.g., D.A. ex rel. Latasha A. v.

16

Houston Independent School Dist., 629 F.3d 450, 456 (5th Cir. 2010); A.W. v. Jersey City Public Schs., 486 F.3d 791, 803 (3d Cir. 2007) (en banc); Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 28 (1st Cir. 2006), the Second Circuit permits IDEA-based Section 1983 claims, but only where the plaintiff was denied the procedural or administrative remedies that IDEA provides. See Streck v. Board of Educ. of East Greenbush Sch. Dist., 280 F. App'x 66, 68 (2d Cir. 2008); see also Quackenbush v. Johnson City Sch. Dist., 716 F.2d 141, 148 (2d Cir. 1983); K.M. ex rel. A.M. v. Manhasset Union Free Sch. Dist., No. 04-CV-1031, 2006 WL 1071568, at *7 (E.D.N.Y. 2006). Here, Plaintiff essentially alleges that the IHO's misconduct prevented him from pursuing his grievances at an impartial due process hearing, and that the state review process was a sham. See 20 U.S.C. § 1415(f) (providing for impartial due process hearing); Compl. ¶ 62. Consequently, Plaintiff may use Section 1983 to redress the alleged IDEA violations. Cf. Streck, 280 F. App'x at 68 ("Plaintiffs fail to allege a denial of procedural safeguards or administrative remedies: they were afforded a hearing before an impartial hearing officer and review by a state review officer ('SRO'). Therefore, plaintiffs may not rely on § 1983 to pursue monetary damages for violations of the IDEA.").

The Court addresses in turn each of Plaintiff's three

17

IDEA-based Section 1983 claims.

i. Participation in Development of B.L.'s IEP

Plaintiff has also sufficiently alleged that, as a result of the Suozzi's conduct, he was deprived of his federal right to participate in meaningful discussions concerning B.L.'s education. 20 U.S.C. § 1414(b)(4). IDEA "requires school districts to develop an IEP for each child with a disability, with parents playing a significant role in the process." Winkelman, 550 U.S. at 524, 127 S. Ct. at 2000 (citations and quotations omitted). IDEA's Section 1414 provides that "the determination of . . . the educational needs of the child shall be made by a team of qualified professionals and the parent of the child. . . ." 20 U.S.C. § 1414(b)(4) (emphasis added). Plaintiff has alleged that Suozzi drafted a sham, "hitman" report and determined B.L.'s educational needs without any input from Plaintiff. Suozzi's conclusions were presented and explained to Plaintiff at the February 26 meeting with school officials but, construing his allegations liberally, Plaintiff was not given a meaningful opportunity to discuss his objections to Suozzi's "recommendations." (See Compl. ¶ 121 ("Suozzi spent lots of time to emotionally explain how he performed the evaluation, but did not provide any specific information to answer the disputes [Plaintiff] raised.").) Further, it is

18

apparent that Plaintiff claims the District, by cutting Plaintiff out of the IEP development process, has cost B.L. his FAPE. (See Compl. ¶ 286(e); see also Pl. Gibson Opp. at 6.)

## ii. Consent to the Re-evaluation

Plaintiff's claim that Suozzi violated Section 1414(c)(3) by conducting the Re-evaluation without parental consent fails. Setting aside whether the District's alleged after-the-fact breach of Plaintiff's conditions retroactively invalidated his consent, the District authorized Suozzi to proceed with the Re-evaluation, and there is no suggestion that Suozzi was aware of the conditional nature of Plaintiff's consent. In fact, Plaintiff specifically alleges that Defendants Gallo and Marin knew of the conditional consent but makes no similar allegations against Suozzi. (Compl. ¶¶ 318-319.)

## iii. Failure to Gather Supporting Information

Plaintiff claims that Suozzi failed to gather sufficient factual support for certain recommendations he included in his report. (Compl. ¶¶ 231-280.) These allegations do not state a claim under Section 1983 because IDEA does not confer on parents a procedural right to the format of an evaluator's assessment. For example, IDEA does not require that an evaluator's report contain citations to peer-reviewed

publications. (See Compl. ¶¶ 31-32.) Plaintiff may have a claim against the District if the IEP that arose out of Suozzi's evaluation denied B.L. a free and appropriate education, but a Section 1983 claim premised on conclusory allegations that a psychological report was inadequately sourced cannot go forward.

   b. Fourteenth Amendment Claims

Plaintiff also asserts what appear to be Section 1983 claims based on the Fourteenth Amendment's due process clause, specifically that Defendants deprived Plaintiff of (1) a property right in B.L.'s FAPE by failing to develop an IEP in cooperation with both professionals and parents, (Compl. ¶¶ 287-296); and (2) his right to chart his own education by prescribing "parent skills" classes as part of B.L.'s IEP, (Compl. ¶¶ 301-17). The first claim fails because it "is well settled . . . that a plaintiff asserting a constitutionally based [Section 1983] claim for procedural violations of the IDEA must establish a constitutional violation 'outside the scope of the IDEA.'" Engwiller v. Pine Plains Cent. Sch. Dist., 110 F. Supp. 2d 236, 250 (S.D.N.Y. 2000). "In other words, a plaintiff cannot prevail on a [Section 1983] claim for violation[s] of procedural due process under the Fourteenth Amendment if the violations for which she seeks redress are actionable under the IDEA." Id. at 250-251. Here, Plaintiff essentially charges

that school officials failed to comply with the provisions of IDEA governing how his son's IEP was formulated. Plaintiff may have a successful IDEA claim against the District if the IEP that arose out of these alleged deficiencies denied B.L. a free and appropriate education--and that appears to be the gravamen of Plaintiff's case against the District--but Plaintiff may not maintain a procedural due process claim against Suozzi based on a failure to comply with IDEA's strictures. The second claim fails because Plaintiff has not alleged any deprivation of rights. He simply alleged that Suozzi included "parent skills" classes in the recommendation, not that Plaintiff ever received this instruction.

D. State Law Claims

Plaintiff does not assert his breach of contract claim against either Gibson or Suozzi. (See Compl. ¶¶ 318-326.) Hence, that claim is not considered here. Below, the Court considers Plaintiff's "harassment" claim and, out of an abundance of caution, considers whether Plaintiff has sufficiently alleged a prima facie tort claim against either Gibson or Suozzi or a defamation claim against Suozzi.

1. Harassment

New York does not recognize an independent tort for "harassment," Ralin v. City of New York, 44 A.D.3d 838, 839, 844

21

N.Y.S.2d 83, 84 (N.Y. App. Div. 2007), so the Court will analyze Plaintiff's harassment allegations as a claim for intentional infliction of emotional distress.  To state his claim, Plaintiff must demonstrate that Defendants (1) by extreme and outrageous conduct; (2) intentionally or recklessly; (3) caused Plaintiff severe emotional distress.  See Sawicka v. Catena, __ N.Y.S.2d __, 2010 WL 5094399, at *1 (N.Y. App. Div. 2010).  Plaintiff cannot make such a showing against Gibson or Suozzi.  The Court finds that Gibson's and Suozzi's alleged conduct--which can be generally summarized as representing a client (Gibson) and conspiring to shortchange B.L.'s IEP (Suozzi)--was not sufficiently extreme or outrageous to merit recovery under this tort.  See Alam v. HSBC Bank USA, N.A., No. 07-CV-3540, 2009 WL 3096293, at *13 n.7 (S.D.N.Y. Sept. 28, 2009) (collecting examples of behavior that is neither extreme nor outrageous); cf. Sawicka, 2010 WL 5094399, at *1 (installing video camera in women's restroom was sufficiently outrageous to support a jury verdict for plaintiff).

    2. Prima Facie Tort

       Though Plaintiff has not specifically alleged a prima facie tort claim against either Gibson or Suozzi, the Court has a duty to construe a pro se complaint to raise the strongest possible arguments.  To establish a prima facie tort claim, a

22

plaintiff must demonstrate "(1) the intentional infliction of harm, (2) which results in special damages, (3) without any excuse or justification, (4) by an act or series of acts which would otherwise be lawful." Morrison v. Woolley, 45 A.D.3d 953, 954, 845 N.Y.S.2d 508, 509 (N.Y. App. Div. 2007) (citations omitted). This claim fails because, although he included damages of one million dollars against each defendant in his prayer for relief on his harassment claim, Plaintiff has not alleged special damages. "[D]amages in round numbers which amount to mere general allegations" are "insufficient allegation[s] of damages to support a cause of action for prima facie tort." Vigoda v. DCA Prods. Plus, Inc., 293 A.D.2d 265, 266, 741 N.Y.S.2d 20 (N.Y. App. Div. 2002).

3. Defamation

Plaintiff also appears to assert a defamation claim against Suozzi based on Suozzi's "viciously" including Recommendation 7 in his report. Recommendation 7 reads:

> Home-based instruction represents a unique opportunity to extend the programming throughout BL's day, and can give Mr. and Mrs. Luo the skills needed to maximize their [child's] growth. Home-based programing should emphasize activities of daily living (ADL), leisure (play) skills, and communication skills.

(Compl. ¶¶ 244-245.) Under a liberal reading of his Complaint,

23

Plaintiff alleges that this passage falsely states that he is an unskilled parent, (see Compl. ¶¶ 250-252), and that the passage damaged Plaintiff's good reputation. (Compl. ¶¶ 308-309.)

Although none of the parties address this issue, the Court finds that Plaintiff cannot state a defamation claim. The elements of defamation in New York are "a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and it must either cause special harm or constitute defamation per se." Finkel v. Dauber, 29 Misc. 3d 325, 328, 906 N.Y.S.2d 697, 701-02 (N.Y. Sup. Ct. 2010) (citations and quotations omitted).

In this case, Plaintiff cannot establish an actionable false statement, let alone state a valid claim. Only statements of fact, capable of being proven false, are actionable and whether a statement is one of fact is for courts to determine. Id. Context is key to that evaluation, and courts are guided by four factors: "(1) an assessment of whether the specific language in issue has a precise meaning which is readily understood or whether it is indefinite and ambiguous; (2) a determination of whether the statement is capable of being objectively characterized as true or false; (3) an examination of the full context of the communication in which the statement

appears; and (4) a consideration of the broader social context or setting surrounding the communication including the existence of any applicable customs or conventions which might signal to readers or listeners that what is being read or heard is likely to be opinion, not fact." Id. (quotations and citations omitted); see also Gross v. New York Times Co., 82 N.Y.2d 146, 623 N.E.2d 1163 (1993). All of these factors illustrate that Suozzi's statement cannot reasonably be interpreted as defamatory.

Read from Plaintiff's perspective in the harshest light, Suozzi's recommendation suggests that Plaintiff lacked the full complement of skills necessary, in Suozzi's opinion, to maximize B.L.'s development. What constitutes a "maximization" of B.L.'s development is indefinite and ambiguous (factor one), and thus Recommendation 7 cannot be objectively characterized as true or false (factor two). Further, Recommendation 7 was made in the context of providing a professional evaluation about how best to meet B.L.'s educational needs; the limited readership of Suozzi's report would have understood that his recommendation constituted his independent opinion, not a statement of fact (factors three and four). (Compl. ¶ 309.) Accordingly, the Court finds that Recommendation 7 cannot be construed as an actionable false statement, and thus Plaintiff cannot state a

defamation claim.

E. Suozzi is not Entitled to Immunity

Suozzi claims that he is entitled to immunity under the doctrine of witness immunity. (Suozzi Br. at 29). He is not. Suozzi is being sued for his alleged role in drafting sham "recommendations" for B.L.'s educational program and presenting them to Plaintiff as the final version of B.L.'s IEP, not simply for his participation in the School District's due process hearing. Absolute witness immunity:

> [S]hields witnesses from civil rights claims. This immunity extends to all persons, whether governmental, expert, or lay witnesses, integral to the trial process. The rationale for absolute witness immunity lies in the concern that witnesses fearing civil liability for their testimony might not be willing to come forward to testify or might give distorted testimony. Protecting witnesses from liability encourages witnesses to testify and furthers the fact-finding and truth-seeking process of the courts.

Elmasri v. England, 111 F. Supp. 2d 212, 221 (E.D.N.Y. 2000). This rationale is simply inapplicable to Plaintiff's Section 1983 claim against Suozzi. Suozzi's citation to a case extending immunity to psychiatrists who conduct competency hearings, see Moses v. Parwatikar, 813 F.2d 891, does not help his defense because the Court rejects the idea that Suozzi's

alleged role was "analogous to that of a witness in a judicial proceeding." Id. at 892.

CONCLUSION

For the foregoing reasons, Plaintiff's motion to amend the caption (Docket Entry 60) is GRANTED to the extent that the Court construes Plaintiff's Complaint to assert his own claims, not those of B.L. Gibson's motion to dismiss the Complaint (Docket Entry 24) is GRANTED, and Plaintiff's case against her is DISMISSED in its entirety. Suozzi's motion to dismiss (Docket Entry 51) is GRANTED IN PART AND DENIED IN PART. Plaintiff's sole surviving claim against Suozzi is his Section 1983 claim that Suozzi deprived him of his right to participate in determining the educational needs of his child, thereby depriving B.L. of a free appropriate public education. Plaintiff's remaining claims against Suozzi are DISMISSED.

Suozzi's request for oral argument (Docket Entry 52) is DENIED. The Court is also in receipt of a flurry of letters between the parties concerning the state of discovery. These discovery issues are moot as to Gibson, and the Court will address these issues as to the remaining Defendants at the upcoming pre-motion conference.

The Clerk of the Court is directed to mail Plaintiff a copy of this Order.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:      March __15__, 2011
            Central Islip, New York