```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
JENN-CHING LUO,

                    Plaintiff,

        -against-                          MEMORANDUM AND ORDER
                                           10-CV-1985 (JS)(AKT)
BALDWIN UNION FREE SCHOOL DISTRICT,
MICHELLE GALLO, SHERRISSE MARTIN,
SUSAN M. GIBSON and JOHN M. SUOZZI,

                    Defendants.
----------------------------------------X
Appearances:
For Plaintiff:      Jenn-Ching Luo, pro se
                    830 Hastings Street
                    Baldwin, NY 11510

For Defendants      Jeltje DeJong, Esq.
Baldwin UFSD,       Kelly E. Wright, Esq.
Michelle Gallo,     Devitt Spellman Barrett, LLP
and Sherrisse       50 Route 111
Martin:             Smithtown, NY 11787

John M. Suozzi:     Jonathan R. Hammerman, Esq.
                    Kaufman, Borgeest & Ryan LLP
                    1305 Franklin Avenue
                    Garden City, NY 11530

                    Dennis John Dozis, Esq.
                    Kaufman, Borgeest & Ryan LLP
                    120 Broadway, 14th Floor
                    New York, NY 10271
```

SEYBERT, District Judge:

Pro se Plaintiff Jenn-Ching Luo brought this action to redress perceived shortcomings in the way Defendant Baldwin Union Free School District (the "District") and several individual defendants addressed the educational needs of B.L., Plaintiff's disabled child. Plaintiff sued the District,

Michelle Gallo, Sherrisse Martin, Susan Gibson and John Suozzi, Ph.D; he asserts violations of the Individuals with Disabilities Education Act (the "IDEA") and Section 1983 of Title 42 of the United States Code ("Section 1983"). He also asserts several state law claims.

In its March 15, 2011 Memorandum and Order (the "March Order"), the Court dismissed all of Plaintiff's claims against Gibson and all but one against Suozzi. (Docket Entry 74.) Pending before the Court is the District, Gallo, and Martin's motion for judgment on the pleadings and for summary judgment. (Docket Entry 79.) For the following reasons, this motion is GRANTED. Further, because the Court has reviewed the administrative record and concludes that there was no IDEA violation here, the remaining claim against Suozzi (a Section 1983 claim predicated on the IDEA) is also dismissed.

## BACKGROUND

The allegations in Plaintiff's Complaint are detailed in the March Order, with which the reader's familiarity is presumed. In this section, the Court will provide a brief synopsis of the underlying allegations in order to give context to the discussion that follows. To the extent appropriate, it will cite specific evidence from the administrative record in

the analysis section below.[1]

Very briefly, in advance of a meeting to review B.L.'s individualized education plan (the "IEP"), the District had B.L.'s educational needs evaluated by a woman named Andretta. Plaintiff was concerned that Andretta's report may have been tainted because she was allegedly not a disinterested evaluator and her report was skewed to "recommend" the educational program that best suited the District. The District arranged a second evaluation (the "Reevaluation"), which Suozzi conducted and which resulted in a number of recommendations for B.L.'s development. Plaintiff vehemently disagreed with two of these recommendations: Recommendation 6 (which stated that B.L. was not ready to learn some of the skills being taught under his then-current IEP) and Recommendation 7 (which suggested that Plaintiff learn skills to foster B.L.'s development at home). (See generally March Order 3-6.)

Plaintiff received a copy of Suozzi's report two days before February 26, 2009, the date on which B.L.'s committee on

---

[1] The Court notes that Plaintiff used virtually the entirety of his briefs--an opposition brief and a sur-reply that was filed without permission--to disparage opposing counsel's intelligence and to rehash the allegations in his Complaint without citing to evidence in the administrative record. The latter strategy stems from an apparent misunderstanding about what evidence the Court may consider when evaluating a motion for summary judgment in an IDEA case. The proper standard of review is addressed below.

special education (the "CSE") met to discuss possible changes to B.L.'s then-current IEP (the "February CSE Meeting"). At that meeting, Plaintiff presented a written response to the report and he and Suozzi discussed Suozzi's recommendations in detail. Ultimately, Suozzi's recommendations were not incorporated into B.L.'s IEP, which remained essentially unchanged. (See generally March Order 7.)[2]

Apparently still upset with the Reevaluation and the recommendations it yielded, Plaintiff filed a due process complaint with the school. A hearing was held, and an independent hearing officer (the "IHO") determined that there had been no IDEA violation. (IHO Decision, R. 1036-1090.) A state review officer ("SRO") affirmed the IHO's decision. (SRO Decision R. 1182-1200.)

## DISCUSSION

As the Court explained in the March Order, Plaintiff's Complaint, liberally construed, purports to raise four federal claims: first, a claim that all Defendants violated the IDEA by (a) subjecting B.L. to the Reevaluation without valid parental consent, (b) failing to gather the relevant information in

---

[2] This last point is notable because beyond Plaintiff's criticisms of Suozzi's report, Plaintiff does not explain whether or how B.L.'s IEP was inadequately tailored to guarantee B.L.'s FAPE.

4

support of Recommendations 6 and 7, and (c) cutting Plaintiff out of meaningful discussions concerning B.L.'s IEP by presenting Suozzi's Reevaluation of B.L.'s educational needs to Plaintiff at the February CSE Meeting as a _fait accompli_; _second_, a Section 1983 claim that all Defendants deprived Plaintiff of his rights under IDEA for the same reasons; _third_, a Section 1983 claim that all Defendants deprived Plaintiff of a Fourteenth Amendment property right to B.L.'s free appropriate public education ("FAPE"); and _fourth_, a Section 1983 claim that all Defendants deprived Plaintiff of a Fourteenth Amendment liberty right by suggesting that Plaintiff learn "parent skills" as part of B.L.'s IEP. (March Order 10-11 (citing Compl. ¶¶ 301-317).)

The Complaint also purports to raise four state law claims: _first_, a claim that Gallo and Martin breached a contract by not honoring the conditional nature of Plaintiff's consent to the Reevaluation; _second_, a claim that all Defendants "harassed" Plaintiff, which the Court construed as an intentional infliction of emotional distress claim; _third_, a claim that all Defendants committed a _prima facie_ tort; and _fourth_, a claim that Suozzi defamed Plaintiff. (March Order 11 (citing Compl. ¶¶ 309, 318-331).)

The Moving Defendants have asked for a summary

5

determination that Plaintiff cannot prevail on his IDEA claim and for judgment on the pleadings as to the remainder of Plaintiff's case. The Court will address the Moving Defendants' arguments below, but it first considers the impact the March Order had on Plaintiff's case.

I. The Current State of Plaintiff's Case

Strictly speaking, the March Order did not address Plaintiff's claims as against the Moving Defendants, but the rationale in dismissing many of Plaintiff's claims against Gibson and Suozzi applies with equal force to the pending motion. The Court notes the following carry-over points from the March Order.

First, as there is no individual liability under IDEA, Plaintiff's IDEA claims against Gallo and Martin are dismissed. (See March Order 13.) To the extent that Plaintiff asserts IDEA claims against Gallo and Martin in their official capacities, these claims are dismissed as redundant of his IDEA claim against the District. See Anemone v. Metro. Tranps. Auth., 410 F. Supp. 2d 255, 264 n.2 (S.D.N.Y. 2006).

Second, Plaintiff's Section 1983 claims that the Moving Defendants violated his rights under the Fourteenth Amendment are dismissed because Plaintiff has not alleged a cognizable deprivation of a constitutional right apart from what

is already covered by the Section 1983 claim that uses IDEA as its foundation. (See March Order 20-21.)

Third, Plaintiff's prima facie tort claims against the Moving Defendants are dismissed for failure to allege special damages. (See March Order 23.)

Fourth, the Court construes Plaintiff's defamation claim as against Suozzi only. (See March Order 23-26.)

Accordingly, the Moving Defendants face only the following claims: first, an IDEA claim that the District (a) subjected B.L. to the Reevaluation without valid parental consent, (b) failed to gather the relevant information in support of Recommendations 6 and 7, and (c) cut Plaintiff out of meaningful discussions concerning B.L.'s IEP by presenting Suozzi's Reevaluation as a fait accompli; second, a Section 1983 claim that the Moving Defendants deprived Plaintiff of his rights under the IDEA; third, a state law breach of contract claim against Gallo and Martin; and fourth, a state law intentional infliction of emotional distress claim against the Moving Defendants.

## II. The Moving Defendants' Motion

As mentioned already, the Moving Defendants seek a summary determination that Plaintiff cannot prevail on his IDEA claims and judgment on the pleadings as to the remainder of

Plaintiff's case.

   A. There Was No IDEA Violation in this Case

      The Court first tackles Plaintiff's IDEA claim.

      1. Standard of Review for IDEA Claims

      It is well-settled that a federal court's role in "reviewing state educational decisions is circumscribed." T.Y. v. N.Y.C. Dep't of Educ., 584 F.3d 412, 417 (2d Cir. 2009) (quoting Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 112 (2d Cir. 2007)). In making its own decision on the preponderance of the evidence, the Court "must give due weight to the administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." Id. (quoting A.C. ex rel. M.C. v. Bd. of Educ., 553 F.3d 165, 171 (2d Cir. 2009)). "Therefore, as the Supreme Court has concluded, courts may not 'substitute their own notions of sound educational policy for those of the school authorities which they review.'" Id. (quoting Bd. of Educ. v. Rowley, 458 U.S. 176, 206, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982)).

      IDEA claims can often be resolved on summary judgment because, although the Court is empowered to hear new evidence if necessary, it has the benefit of the administrative record and

it must afford a certain degree of deference to the administrative findings. See id. Plaintiff devotes a significant portion of his opposition papers to arguing that the Court may not award the Moving Defendants summary judgment at this stage because it is bound to accept his allegations as true and may not look outside his pleadings. (Pl. Opp. 1-2.) This is incorrect. "Unlike with an ordinary summary judgment motion, the existence of a disputed issue of material fact will not necessarily defeat a motion for summary judgment in the IDEA context." J.S. v. Scarsdale Union Free Sch. Dist., __ F. Supp. 2d __, 2011 WL 5925309, at *21 (S.D.N.Y. Nov. 18, 2011). "Instead, summary judgment in IDEA cases such as this is 'in substance an appeal from an administrative determination, not a summary judgment.'" Id. (quoting Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ., 397 F.3d 77, 83 n.3 (2d Cir. 2005)). The Court has reviewed the record in this case and finds that Plaintiff's case is without merit.

2. Plaintiff Asserts Procedural Violations

As explained above, Plaintiff's Complaint asserts that Defendants violated the IDEA by (1) violating the terms of his conditional consent; (2) failing to gather the adequate, relevant information; and (3) cutting Plaintiff out of the decision-making process concerning B.L.'s education. These are

9

alleged procedural violations. See P.K. ex rel. S.K. v. N.Y.C. Dep't of Educ. (Region 4), __ F. Supp. 2d __, 2011 WL 3625317, at *10 (E.D.N.Y. Aug. 15, 2011) ("A procedural violation generally concerns the process by which the IEP and placement offer was developed and conveyed."). Procedural violations amount to a denial of a FAPE in three situations:

> [I]f the procedural inadequacies--
>
> > (I) impeded the child's right to a free appropriate public education;
> >
> > (II) significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child; or
> >
> > (III) caused a deprivation of educational benefits.

20 U.S.C. § 1415(f)(3)(E)(ii); accord P.K. ex rel. S.K., 2011 WL 3625317, at *10. The Court's analysis begins and ends with the uncontroverted evidence that Suozzi's Reevaluation, to which Plaintiff vehemently objected on procedural and substantive grounds, was never the basis for any change to B.L.'s IEP. (See SHO Decision 12.) See also, e.g., Scruggs v. Meriden Bd. of Educ., No. 03-CV-2224, 2007 WL 2318851, at *10 (D. Conn. Aug. 10, 2007) ("A FAPE denial has occurred where procedural irregularities result in the loss of educational opportunity or seriously infringe upon the parent's opportunity to participate

in the development or formulation of the IEP."). For the sake of explanation, the Court will briefly address Plaintiff's three alleged procedural deficiencies below.

### a. Plaintiff's Consent

Plaintiff maintains that Suozzi evaluated B.L. without Plaintiff's consent. More precisely, Plaintiff alleges that he consented to Suozzi's Reevaluation but that his consent was given with four conditions. (March Order at 6 (citing Compl. ¶¶ 137-170).) And, arguing that the District failed to satisfy Plaintiff's conditions after-the-fact, Plaintiff contends that his consent was retroactively void. (See March Order 6.) The IHO considered this theory in detail and concluded that the District substantially complied with all four of Plaintiff's conditions (IHO Decision 48-49), and, in any event, that there was no IDEA violation because this was a procedural violation that did not impede B.L.'s right to a FAPE, impede Plaintiff's right to be part of the decision-making process, or deprive B.L. of educational benefits (id. at 50). Similarly, the SRO, although noting that the District did not strictly comply with Plaintiff's second condition, found that B.L. had not been denied a FAPE. (SRO Decision 13-14.)

Plaintiff has not provided a persuasive case that the District's shortcomings in obtaining Plaintiff's consent to the

Reevaluation resulted in an IDEA violation.  The record in this case supports the IHO's and SRO's findings that, even if the District's failure to comply with Plaintiff's second condition constituted a procedural violation, the District's missteps in this area did not impede B.L.'s right to a FAPE, impede Plaintiff's participation in the decision-making process, or deprive B.L. of educational benefits.  With respect to B.L.'s right to a FAPE or the deprivation of his educational benefits, the Court reiterates that the Suozzi Reevaluation was not the basis for any change in B.L.'s IEP.  With respect to blocking Plaintiff's participation in the decision-making process, the record shows that Plaintiff was involved in discussions about B.L.'s education.  (See Suozzi Report, R. 543-54; Plaintiff's Responses to Suozzi Report, R. 816-818.)  The latter point is discussed again in Section II.A.2.c, below.

### b. Failure to Gather Information

Plaintiff also argues that Defendants violated IDEA because Suozzi's recommendations were insufficiently supported by relevant evidence.  (See March Order 6; Compl. ¶¶ 231-280.)  In the March Order, the Court ruled that this theory failed to state a claim because IDEA does not provide a right to an evaluation that is supported by citations to peer-reviewed academic literature, as Plaintiff's Complaint suggested.  (March

Order 19.) In an abundance of caution, the Court explains in more detail why Plaintiff's claim under IDEA Section 1414(b)(2) is unavailing. This Section provides in relevant part:

> In conducting the evaluation, the local educational agency shall--
>
> (A) use a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information, including information provided by the parent, that may assist in determining--
>
>> (i) whether the child is a child with a disability; and
>>
>> (ii) the content of the child's individualized education program, including information related to enabling the child to be involved in and progress in the general education curriculum, or, for preschool children, to participate in appropriate activities;
>
> (B) not use any single measure or assessment as the sole criterion for determining whether a child is a child with a disability or determining an appropriate educational program for the child; and
>
> (C) use technically sound instruments that may assess the relative contribution of cognitive and behavioral factors, in addition to physical or developmental factors.

20 U.S.C. § 1414(b)(2). The IHO considered Suozzi's Reevaluation and found that Suozzi complied with these requirements. (IHO Decision 51-52.) Having reviewed Suozzi's

13

report, the Court agrees that Suozzi gathered adequate, relevant information about B.L.  (See Suozzi Report, R. 543-53.)

Even if Suozzi's report was insufficiently supported, there would still be no IDEA violation because it did not deny B.L. a FAPE or deprive him of educational benefits.  Plaintiff's Complaint focuses on Suozzi's sixth and seventh recommendations, which note that "some of the skills that are a part of [B.L.'s] current instructional program are skills that he is not yet 'ready' to learn" (Recommendation 6) and that home-based instruction would maximize B.L.'s development (Recommendation 7).  (Compl. ¶¶ 231-80.)  But no changes were made to B.L.'s academic program as a result of the Reevaluation (see SRO Decision 12), and thus a deficiency in the Reevaluation process as to these recommendations could not have hampered B.L.'s education.  Of course, a procedurally-deficient evaluation that does not prompt a change in a student's IEP could nevertheless support an IDEA violation--for example, if the deficient evaluation prevented needed educational benefits from being added to an IEP.  But such is not the case with Recommendations 6 and 7.  In Recommendation 6, Suozzi voiced his concern that B.L. was receiving lessons that he was not ready to learn.  In Recommendation 7, Suozzi recommended that Plaintiff learn skills to help foster B.L.'s development at home.  Plaintiff forcefully

14

disagreed with both recommendations, and neither resulted in a change to B.L.'s IEP. In other words, Plaintiff disagreed that B.L.'s IEP should be changed, and no changes were made.

### c. Plaintiff's Participation in the Decision-Making Process

Plaintiff also maintains that the District failed to have a team of professionals and parents determine B.L.'s educational needs, as required by Section 1414(b)(4). There is no evidence to support this claim. Section 1414(b)(4) provides:

> Upon completion of the administration of assessments and other evaluation measures--
>
> (A) the determination of whether the child is a child with a disability as defined in section 1401(3) of this title and the educational needs of the child shall be made by a team of qualified professionals and the parent of the child in accordance with paragraph (5); and
>
> (B) a copy of the evaluation report and the documentation of determination of eligibility shall be given to the parent.

20 U.S.C. § 1414(b)(4). The IHO concluded that Plaintiff had an opportunity to participate in decisions affecting B.L.'s education. (IHO Decision 52-53.) The evidence in the record is in accord with this finding. The Court notes the following: <u>first</u>, Suozzi solicited Plaintiff's perspective as part of the Reevaluation process (Suozzi Report, R. 544); <u>second</u>, Plaintiff

15

prepared written responses to the portions of Suozzi's report to which Plaintiff objected (see Indep. Hrg. Tr., R. 148-50; Pl. Responses to Suozzi Report, R. 816-18); and third, Plaintiff was an active participant in the February 26, 2009 CSE meeting, which lasted twice the normal length and during which Plaintiff and Suozzi discussed Suozzi's recommendations (Indep. Hrg. Tr., R. 150). To the extent Plaintiff suggests that he did not have enough time to respond to Suozzi's recommendations (see Compl. ¶ 119), this allegation is belied by Plaintiff's written objections (R. 816-18).

Accordingly, for the reasons discussed above, the Court concludes that there was no IDEA violation in this case and that the District is entitled to summary judgment on Plaintiff's IDEA claim.[3]

B. The Moving Defendants are Entitled to Judgment on the Pleadings as to Plaintiff's Remaining Claims

The Moving Defendants are entitled to judgment on the pleadings as to Plaintiff's remaining claims.

1. Legal Standard

---

[3] To the extent that Plaintiff alleges flaws in the due process procedure (see, e.g., Compl. ¶¶ 28, 31), these allegations are rebutted generally by the thoroughness of the administrative record and the IHO's and SRO's decisions and, in any event, are irrelevant in the absence of any indication that B.L. was denied a FAPE or that his parents were prevented from participating in the decision-making process.

The standard for a motion for judgment on the pleadings is the same standard applicable to motions to dismiss under Rule 12(b)(6). L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 429 (2d Cir. 2011). To survive the motion, a plaintiff must plead sufficient factual allegations in the complaint to "state a claim [for] relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929, 949 (2007). The complaint does not need "detailed factual allegations," but it demands "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. In addition, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level." Id. Determining whether a plaintiff has met his burden is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

Because Plaintiff is litigating pro se, the Court reads his Complaint liberally, see, e.g., Mancuso v. Hynes, 379 F. App'x 60, 61 (2d Cir. 2010), and interprets his papers to

17

"raise the strongest arguments that they suggest," Corcoran v. N.Y. Power Auth., 202 F.3d 530, 536 (2d Cir. 1999) (citing McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999)).

2. Application

Plaintiff's remaining claims fail as a matter of law. His Section 1983 claim for IDEA violations fail because he cannot establish an underlying IDEA violation. See, e.g., Daniels v. Williams, 474 U.S. 327, 330, 106 S. Ct. 662, 664, 88 L. Ed. 2d 662 (1986) ("But in any given § 1983 suit, the plaintiff must still prove a violation of the underlying . . . right . . . ."). The state law claims against the Moving Defendants also fail to state a claim. For reasons similar to the ones cited in the March Order, Plaintiff's allegations against the District, Martin, and Gallo do not rise to the level of outrageousness required to state a claim for intentional infliction of emotional distress. (March Order 22.) See also, e.g., Cunningham v. Sec. Mut. Ins. Co., 260 A.D.2d 983, 984, 689 N.Y.S.2d 290, 291 (3d Dep't 1999) (allegations that insurance company failed to compensate plaintiff for fire damage to her home--leaving her without a home, possessions, or living expenses for a year--coupled with allegation that it accused her of arson and perjury did not state a prima facie case for intentional infliction of emotional distress). And, Plaintiff's

claim against Martin and Gallo for breach of contract, which arises out of Martin and Gallo's failure to honor Plaintiff's conditional consent, fails because Plaintiff has not identified his damages (setting aside whether Plaintiff could establish a binding contract in these circumstances). Plaintiff alleges that Martin and Gallo's conduct caused him "mental stress." (Compl. ¶ 325.) But absent special circumstances not present here, mental suffering may not form the basis of a breach of contract action in New York. See Cianciotto v. Hospice Care Network, 32 Misc. 3d 916, 923, 927 N.Y.S.2d 779, 785 (Dist. Ct. Nassau Cnty. 2011); N.Y. JUR. DAMAGES § 103.

## CONCLUSION

For the foregoing reasons, the Moving Defendants' motion (Docket Entry 79) is GRANTED. The Moving Defendants are entitled to a summary determination that there was no IDEA violation and to judgment on the pleadings as to Plaintiff's remaining claims. Additionally, because the Court has concluded that there was no IDEA violation in this case, Plaintiff's remaining claim against Suozzi (a Section 1983 claim predicated on IDEA) is also dismissed.

The Clerk of the Court is respectfully directed to terminate all pending motions, enter judgment for Defendants, mark this case CLOSED, and mail Plaintiff a copy of this Memorandum and Order.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:  March  5 , 2012
        Central Islip, New York